**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANK HUBBARD,<br><br>                     Plaintiff,<br><br>                     v.<br><br>GARY LANIGAN, *et al.*,<br><br>                     Defendants. | Civil Action No. 18-2055 (MAS) (DEA)<br><br>**OPINION** |

**SHIPP, District Judge**

       This matter comes before the Court on Defendants' Motions seeking Summary Judgment in this prisoner civil rights matter. (ECF Nos. 135-36.) Plaintiff did not timely file opposition to either Motion, and instead filed a late cross-motion for summary judgment (ECF No. 138) four months after the time for responding had ended. (*See* ECF No. 138.) For the following reasons, Defendants' Motions are granted, Plaintiff's Motion is denied, and judgment shall be entered in favor of Defendants as to all of Plaintiff's remaining claims.

**I.    BACKGROUND**

       Plaintiff filed his complaint in this matter on February 13, 2018. (ECF No. 1.) In his complaint, Plaintiff generally asserted that Defendants, state supervisory officials involved in the adoption of protocols for the treatment of state prisoners' illnesses while in prison, had adopted policies that resulted in his being denied treatment for his Hepatitis C with direct acting antiviral drugs (DADs), such as Harvoni, which could cure the disease, resulting in pain and suffering on Plaintiff's part. (*Id.*) Following the Court's screening of Plaintiff's complaint, only two claims

remain in this matter – Plaintiff's claim that Defendants were deliberately indifferent to his medical needs in violation of his Eighth Amendment rights, and a state law claim purportedly brought pursuant to N.J. Stat. Ann. § 26:2T-1. The remaining Defendants[1] now seek an entry of summary judgment in their favor as to both claims. (ECF Nos. 135-36.) Plaintiff did not timely file opposition, and instead filed a proposed cross-motion for summary judgment, devoid of a statement of material facts in dispute which properly responded to Defendants' Statement of Material Facts. (ECF No. 138.)

While on parole in 1981, Plaintiff shot and killed a man during a robbery, resulting in his receiving a life sentence with a twenty-five-year parole disqualifier. (ECF No. 135-2 at 1.) Plaintiff remained in prison until his release in January 2021. (*Id.*) While in prison in 1999, Plaintiff contracted Hepatitis C. (*Id.* at 2.) In 2011, the FDA approved the use of DADs to treat Hepatitis C. (*Id.*) Beginning in 2015, the American Association for the Study of Liver Disease and the Infectious Diseases Society of America began to recommend the use of these drugs for adults with chronic Hepatitis C. (*Id.*) In response, the New Jersey Department of Corrections and its contracted medical provider, Rutgers University Correctional Health Care, adopted a protocol for prisoners infected with Hepatitis C based on one implemented by the Federal Bureau of Prisons. (*Id.* at 3.) Under this protocol, "all inmates with Hepatitis C are entered into a chronic care clinic and continually monitored, examined, and tested." (*Id.*) The protocol also provides that those individuals whose disease is likely to be well treated by DADs based on a number of factors are to be placed on a list for treatment with the drugs. (*Id.*)

The order of treatment for those placed on this waiting list for treatment with DADs is based on both the individual's APRI score, a diagnostic device which is indicative of liver health

---

[1] An additional defendant was previously dismissed from this matter with prejudice in light of her passing. (*See* ECF No. 97.)

and the likelihood of developing cirrhosis, and any other diagnostic evidence of severe liver issues. (*Id.* at 4.) Under the protocol, and in line with that adopted by the Bureau of Prisons, DADs are provided in the following priority order: first to those with the most serious conditions, those with APRI scores above 2.0 and those with cirrhosis and other serious issues; second to those with an APRI score above 1.0 receiving treatment; and finally, to those with scores between .7 and 1.0. (*Id.*) The policy was thereafter amended in January 2018 to place all individuals with an APRI score above .7 in the second group. (*Id.*)

Throughout his time in prison, Plaintiff received treatment for his Hepatitis C, including frequent and recurring monitoring and treatment with various antiviral therapies. (*Id.* at 4-5.) In December 2015, Plaintiff's first care visit following the adoption of the protocol, Plaintiff had an APRI score of .96, but had an ultrasound which indicated a normal sized liver with a "slightly lobulated appearance." (*Id.* at 5.) Based on this data, Plaintiff was determined to be a candidate for treatment with DADs by Dr. Syed Husain, who recommended Plaintiff seek approval for treatment with Harvoni. (*Id.*) In February 2016, Plaintiff had a follow up appointment, during which he had no signs of distress, and was once again told to follow up and seek treatment. (*Id.*) Two weeks later, Plaintiff was seen by Dr. Ahsan, who reviewed Plaintiff's situation, ordered updated bloodwork, and returned him to the clinic to evaluate him for treatment with DADs. (*Id.*) Plaintiff underwent further bloodwork, returning an APRI score of .74. For the next two years, medical staff continued to monitor Plaintiff's liver condition and bloodwork, finding him to generally have an APRI score between .74 and .94, and to have no signs of distress or signs that his illness was out of control with his current course of treatment. (*Id.* at 5-7.) Doctors continued to suggest Plaintiff seek approval for treatment with DADs. (*Id.*) In April 2018, however, Plaintiff returned with bloodwork indicating an APRI score of 1.60, at which point Dr. Hussain ordered an ultrasound and "immediately approved [Plaintiff] for DAD treatment." (*Id.* at 7.) Plaintiff was

prescribed DADs two days later and was treated through July 2018 with the drugs. (*Id.*) As of November 2018, Plaintiff's blood work indicated no Hepatitis viral load. (*Id.* at 8.) Repeated lab work between November 2018 and Plaintiff's release indicated no viral load and that Plaintiff's illness was essentially cured with no lasting effects on Plaintiff's liver. (*Id.* at 8-9.) The provided medical records thus show that, until April 2018, Plaintiff remained in the lowest priority treatment group, and, upon his condition worsening, he was immediately provided with treatment with DADs, resulting in the effective curing of his disease.

## II.     LEGAL STANDARD

Pursuant to Rule 56, a court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is material "if it bears on an essential element of the plaintiff's claim," and is genuine if "a reasonable jury could find in favor of the nonmoving party." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). In deciding a motion for summary judgment, a district court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," *id.*, but must not make credibility determinations or engage in any weighing of the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [however,] there is no genuine [dispute] for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has met this initial burden, the burden shifts to the non-moving party who must provide evidence sufficient to establish that a reasonable jury could find in the non-moving party's favor to warrant the denial of a summary judgment motion. *Lawrence v. Nat'l Westminster Bank N.J.*, 98 F.3d 61, 65 (3d Cir. 1996); *Serodio v. Rutgers*, 27 F. Supp. 3d 546, 550 (D.N.J. 2014).

> A nonmoving party has created a genuine [dispute] of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. However, the party opposing the motion for summary judgment cannot rest on mere allegations, instead it must present actual evidence that creates a genuine [dispute] as to a material fact for trial.

*Serodio*, 27 F. Supp. 3d at 550.

Pursuant to Federal Rule of Civil Procedure 56(e)(2) and Local Civil Rule 56.1, where, as here, the moving party files a proper statement of material facts and the non-moving party fails to file a responsive statement of disputed material facts, this Court is free to consider the moving party's statement of material facts undisputed and therefore admitted for the purposes of resolving the motion for summary judgment. *See, e.g., Ruth v. Sel. Ins. Co.*, No. 15-2616, 2017 WL 592146, at *2-3 (D.N.J. Feb. 14, 2017). Even where the defendants' statement of material facts is deemed admitted and unopposed, a district court is still required to "satisfy itself that summary judgment is proper because there are no genuine disputes of material fact and that [Defendants are] entitled to judgment as a matter of law" in order to grant summary judgment. *Id.* at 2 (citing *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990)).

### III.   DISCUSSION

Defendants first argue that they are entitled to judgment as a matter of law as to Plaintiff's deliberate indifference to medical needs claims both because they were not directly involved in his individual course of treatment and because, even if the policies they allegedly had a hand in

5

adopting affected Plaintiff's course of treatment, Plaintiff's records show no sign that prison officials were deliberately indifferent to his medical needs in relation to his Hepatitis C diagnosis. Even putting aside the question of how involved Defendants were in adopting policies or in causing Plaintiff's course of treatment, this Court agrees that Defendants are entitled to judgment as a matter of law as to Plaintiff's Eighth Amendment claims.

In order to make out a medical claim under the Eighth Amendment, a plaintiff must show that defendants were deliberately indifferent to his medical needs. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). This requires that a plaintiff show that he had a sufficiently serious medical need, and that the defendants engaged in actions or omissions which indicate they were deliberately indifferent to that serious need. *Id.* A medical need is sufficiently serious where it "has been diagnosed as requiring treatment or [is a need that] is so obvious that a lay person would easily recognize the necessity of a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert denied*, 486 U.S. 1006 (1988). A defendant's actions or omissions will in turn amount to deliberate indifference where the defendant "knows of and disregards an excessive risk to inmate health or safety." *Natale*, 318 F.3d at 582 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "Where a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Everett v. Nort*, 547 F. App'x 117, 121 (3d Cir. 2013) (quoting *United States ex rel. Walker v. Fayette County*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)). Where a prisoner has received treatment, he may generally therefore not show deliberate indifference by asserting only his disagreement or dissatisfaction with the treatment he received. *See Hairston v. Director Bureau of Prisons*, 563 F. App'x 893, 895 (3d Cir. 2014); *White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990); *Andrews v. Camden County*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000).

In this matter, Plaintiff's medical records clearly indicate that he received repeated monitoring and treatment for his Hepatitis C. Although Plaintiff may have wished that the prison provided him DADs sooner, that amounts to no more than Plaintiff's disagreement with the chosen course of treatment and the prison's reasonable prioritization of who receives limited supplies of advanced medication. Nothing in Plaintiff's records suggests that prison doctors were persisting in a course of treatment which was shown to be ineffective – instead the records suggest that for several years before Plaintiff's treatment with DADs, his condition was entirely stable and had not progressed to the point of requiring serious medical interventions. When Plaintiff's condition finally did worsen, he was almost immediately provided with the DAD treatment he sought, resulting in his being effectively cured of his condition. The seriousness with which medical staff treated the sudden advancement of Plaintiff's illness, and the immediateness of the response clearly undercut any contention that medical staff were deliberately indifferent to Plaintiff's medical needs. *White*, 897 F.2d at 110; *see also Everett*, 547 F. App'x at 121. As Plaintiff has shown no more than his own disagreement with a course of treatment which had seemed effective and was immediately changed once Plaintiff's condition worsened,[2] he has failed to show prison medical staff, and in turn the supervisors who adopted the protocols guiding the care of Plaintiff, were deliberately indifferent to his needs. Thus, even assuming Plaintiff could show that Defendants' protocols were a moving force behind his course of treatment, he has failed to make

---

[2] In his cross motion for summary judgment, Plaintiff largely attempts to argue that Defendants should be held to a "higher" standard because he believes they should have developed "a coordinated Hepatitis C Virus Program" based on CDC and state recommendations. (*See* ECF No. 138 at 9-10.) The alleged failure to live up to such recommendations is immaterial to the issues at hand here – whether Defendants were deliberately indifferent to *Plaintiff's* needs in particular. The record clearly shows that Defendants monitored Plaintiff's needs and treated his illness, and, when it worsened, provided him with medication which essentially cured him of Hepatitis C. Plaintiff's arguments thus amount to little more than his disagreement with the provided treatment and the speed at which he was provided DADs. Such disagreement is insufficient to show deliberate indifference. *Hairston*, 563 F. App'x at 895; *White*, 897 F.2d at 110.

out a claim for deliberate indifference, and Defendants are clearly entitled to judgment as a matter of law as to his Eighth Amendment claims.

In their final argument, Defendants contend that they are entitled to summary judgment as to Plaintiff's state law claims as a private cause of action does not exist under the statute Plaintiff believes gives rise to his claims, largely for the reasons discussed by Judge Thompson when she dismissed those same claims against a previously dismissed Defendant in this matter. As Judge Thompson explained, by its plain terms the statute in question deals only with reporting requirements for public officials and does not provide for a private damages suit. (*See* ECF No. 50 at 6.) Under New Jersey state law, courts should be "reluctant to infer" a private cause of action where a statute does not explicitly create such a right. *See R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 773 A.2d 1132, 1142 (N.J. 2001). Such a right should only be inferred where a private cause of action is implied by the statute's terms after considering whether the plaintiff is a member of the class of persons the statute was created to benefit, there is evidence the legislature intended to create a private action, and a private cause of action is consistent with the underlying purposes of the statute. *Id.* Having considered these factors and the plain text of the statute, this Court agrees with Judge Thompson that the statute does not create or imply a private cause of action as it concerns only reporting requirements for public officials. Plaintiff's claim under the statute must therefore be dismissed with prejudice. (*See* ECF No. 50 at 6-7.) Summary judgment shall, therefore, be granted as to this claim as well.

As Defendants have shown their entitlement to judgment as a matter of law as to all of Plaintiff's remaining claims, Defendants' Motions (ECF Nos. 135-36) are granted in full. Likewise, because Defendants are clearly entitled to summary judgment in this matter, Plaintiff's cross motion (ECF No. 138) is denied.

## IV. CONCLUSION

In conclusion, Defendants' unopposed Motions for Summary Judgment (ECF Nos. 135-36) are granted, Plaintiff's cross-motion for summary judgment (ECF No. 138) is denied, and judgment shall be entered in favor of Defendants as to all of Plaintiff's remaining claims. An appropriate order follows.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**
